**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRENDA F. HARDIMAN,            ) | CASE NO.  3:11-cv-665 |
| )  | |
| Plaintiff,           ) | |
| ) | MAGISTRATE JUDGE |
| v.           ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE,           ) | |
| Commissioner of Social Security,  ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant.           ) | **ORDER** |

Plaintiff, Brenda F. Hardiman ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.     PROCEDURAL HISTORY**

On April 21, 2006, Plaintiff protectively filed applications for a POD, DIB, and SSI

and alleged a disability onset date of December 15, 2000.  (Tr. 15.)  Her applications were denied initially and upon reconsideration, so she requested a hearing before an administrative law judge ("ALJ").  (Tr. 15.)  On October 23, 2008, an ALJ held Plaintiff's hearing by video conference, but the hearing was rescheduled.  (Tr. 105-08, 83.)  On May 26, 2009, an ALJ held Plaintiff's hearing in person.  (Tr. 59.)  Plaintiff appeared, was represented by counsel, and testified.  (Tr. 57-58.)  A vocational expert ("VE") also appeared and testified.  (Tr. 58.)

On June 25, 2009, the ALJ found Plaintiff not disabled.  (Tr. 25.)  On February 1, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On April 1, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On August 29, 2011, Plaintiff filed her Brief on the Merits.  (Doc. No. 16.)  On October 13, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 17.)  On October 27, 2011, Plaintiff filed a Reply Brief.  (Doc. No. 18.)

Plaintiff asserts two assignments of error:  (1) the ALJ failed to consider whether she met or medically equaled Listing 12.05 from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"); and (2) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was 30 years old on her alleged disability onset date.  (Tr. 23.)  She has at least a high school education and is able to communicate in English.  (Tr. 23.)  She

2

has past relevant work experience as a security guard and janitor.  (Tr. 23.)

    **B.**    **Medical Evidence**

        **1.**    **Medical Evidence from Plaintiff's Developmental Period**

The following summary of medical evidence relates to only Plaintiff's intellectual functioning because only that issue is relevant to her assignments of error.

On September 16, 1981, when Plaintiff was 10 years old, Toledo Public Schools psychologist Roger Johnson assessed Plaintiff's IQ on the Wechsler Intelligence Scale for Children - Revised ("WISC-R") as follows.  (Tr. 258.)  Plaintiff had a verbal IQ of 70, a performance IQ of 84, and a full scale IQ of 75.  (Tr. 258.)

On February 28, 1985, when Plaintiff was 14 years old, Plaintiff underwent additional IQ testing with Toledo Public Schools psychologist Jerome Zake as part of a routine evaluation.  (Tr. 259.)  Upon reviewing Plaintiff's history, Dr. Zake indicated the following.  Plaintiff had been assigned a full scale IQ of 71 in May 1977, and a full scale IQ of 75 in September 1981.  (Tr. 260.)  She had repeated the first grade, and she had been participating in the "developmentally handicapped program" since the third grade. (Tr. 260.)  Her attendance was "good," and her grades in the developmentally handicapped program consisted of "D's, C's, and B's."  (Tr. 260.)

Dr. Zake assessed Plaintiff's IQ on the WISC-R as follows.  (Tr. 259.)  Plaintiff had a verbal IQ of 68, a performance IQ of 88, and a full scale IQ of 76.  (Tr. 259.)  Dr. Zake recognized that Plaintiff's verbal IQ was in the "deficient" range of mental abilities. (Tr. 259.)  He explained that the difference in Plaintiff's effort on the verbal subtests as compared to the performance subtests was statistically significant, and he attributed

Plaintiff's verbal IQ to her general delay in language skills. (Tr. 260.) Based on Plaintiff's history, presentation, IQ test performance, achievement test performance, and information from Plaintiff's mother and teacher, Dr. Zake concluded that Plaintiff's cognitive ability was in the "borderline range." (Tr. 262.) Dr. Zake recommended that Plaintiff be "mainstreamed" into her strongest academic areas, but Plaintiff remained placed in the developmentally handicapped program. (Tr. 262-63.)

On May 4, 1987, when Plaintiff was 16 years old, Toledo Public Schools psychologist Andrew I. Sattler assessed Plaintiff's IQ on the WISC-R because Plaintiff "desire[d] to attend regular classes during the 1987/88 school year." (Tr. 264-65.) Dr. Sattler assessed Plaintiff with a verbal IQ of 68, a performance IQ of 86, and a full scale IQ of 76. (Tr. 264.) Regarding Plaintiff's adaptive behavior, Dr. Sattler indicated that Plaintiff exhibited "significant oral expressive deficits." (Tr. 264.) However, Dr. Sattler also noted that Plaintiff was to be assigned with non-handicapped peers in English III, American History/Government, and Graphics classes beginning in September 1987. (Tr. 265.)

### 2. Medical Evidence After Plaintiff's Developmental Period

On June 12, 2006, when Plaintiff was 35 years old, Plaintiff presented to psychologist Alan White, Ph.D., for a psychological evaluation upon referral from the Bureau of Disability Determination. (Tr. 291-97.) Dr. White indicated that Plaintiff reported she had graduated high school with enrollment in special education classes and was unable to hold employment because of carpal tunnel. (Tr. 293.) Dr. White assessed Plaintiff on the Wechsler Adult Intelligence Scale III ("WAIS III") as follows. Plaintiff had a verbal IQ of 62, a performance IQ of 64, and a full scale IQ of 60. (Tr.

295.) Dr. White explained that Plaintiff's test scores showed that Plaintiff was functioning "within the mild mental retardation rage of ability," but he declined to diagnose Plaintiff as such because there was "a lack of provided information citing a diagnosis of MMR prior to age 18." (Tr. 296-97.)

Dr. White indicated that Plaintiff reported she was able to feed, bathe, and dress herself without assistance; care for her children; and perform most household duties such as wash dishes, clean, do laundry, shop, and cook. (Tr. 293.) Dr. White assessed Plaintiff's ability to perform work-related activities as follows. Plaintiff was mildly restricted in her ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks because of post-traumatic stress disorder ("PTSD") and depression. (Tr. 297.) She was not impaired in her ability to understand, remember, and follow instructions. (Tr. 297.) She was mildly impaired in her ability to relate to others, including fellow workers and supervisors, because of PTSD and depression. (Tr. 297.) And she was moderately impaired in her ability to withstand the stress and pressure associated with day-to-day work activity because of PTSD and depression. (Tr. 297.) Dr. White concluded that, if Plaintiff were found eligible for benefits, the benefits should be given to a payee to manage the funds because Plaintiff had a "limited level of intellectual abilities." (Tr. 297.)

On July 3, 2006, state agency reviewing psychologist Karla Voyten, Ph.D., reviewed Plaintiff's records, performed a Psychiatric Review Technique, and assessed Plaintiff's mental RFC. (Tr. 300-16.) In her Psychiatric Review Technique, Dr. Voyten indicated that there was insufficient evidence to make any make any medical disposition. (Tr. 300, 312.) In her mental RFC assessment, however, Dr. Voyten

5

assessed Plaintiff under Listings 12.02 for "organic mental disorders," 12.04 for "affective disorders," and 12.06 for "anxiety related disorders," and indicated the following. (Tr. 314.) Plaintiff was moderately limited in her abilities: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods of time; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. (Tr. 314-15.) Plaintiff otherwise was not significantly limited. (Tr. 314-15.)

Dr. Voyten noted that Plaintiff scored within the mildly mentally retarded range during her consultative examination, but she believed those IQ scores were not valid for two reasons. First, there was "no valid reason for [the] substantial decline" from her last IQ scores. (Tr. 316.) Second, the scores were belied by the record: Plaintiff had a driver's license; had a "good work history" that included work as a security guard and a cashier; cared for her own children; performed such activities of daily living as cooking, cleaning, doing laundry, shopping, and managing finances; and reported no problems getting along with co-workers or supervisors. (Tr. 316.) Accordingly, Dr. Voyten believed that Plaintiff was only partially credible and had exaggerated the extent to which her intellectual functioning was limited. (Tr. 316.)

Dr. Voyten believed that Plaintiff functioned in the "borderline intellectual range" and concluded that Plaintiff was "able to complete multiple step tasks in situations where duties are relatively static, changes can be explained, and there are no production schedules or quotas." (Tr. 316.)

6

On November 6, 2006, state agency reviewing psychologist Melanie Bergsten, Ph.D., affirmed Dr. Voyten's assessment. (Tr. 328.)

On February 23, 2009, Plaintiff presented to Dr. Alamdar Kazmi, M.D., at Unison Behavioral Healthcare for an initial psychiatric evaluation regarding her PTSD and depression. (Tr. 342.) Upon mental examination, Dr. Kazmi noted that Plaintiff "appears to have low-average to borderline intellectual functioning." (Tr. 343.)

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

Plaintiff testified at her hearing as follows. Plaintiff presently worked part-time as a janitor. (Tr. 62-63.) She worked two hours a night for five nights a week. (Tr. 62-63.) She also had a driver's license and drove her daughter to and from school. (Tr. 74.) She was not able to perform her past work or any other work primarily because of problems with her right shoulder, arm, and hand, as well as arthritis in both knees. (Tr. 68-70.) She attended psychiatric therapy at Unison Health Group for depression and "a little light mental disability." (Tr. 71.) She had received such therapy "on and off" for the past 15 years. (Tr. 71.) She also had trouble remembering things. (Tr. 75.) She held many jobs in the past, but all of them were short-term. (Tr. 75.) She did not know why they did not last longer, but she speculated that it was because her employers did not want to retain her after they found out about her learning disability and tendency to forget things. (Tr. 75.)

#### 2. The VE's Testimony

The ALJ posed the following hypothetical to the VE:

7

> Let me ask you to assume that we are talking about a person who is 38 years old, let's assume a high school education, and let's assume this person has the work history that [Plaintiff] described, and let's assume this person could perform work at the light exertion level. Let's assume this person could only occasionally grasp or twist items with the right, dominant hand, and let's assume this person could understand and remember simple instructions, could concentrate for two hour periods over an eight hour day, on simple tasks, could interact appropriately with coworkers and supervisors, could adapt to changes in the work setting.

(Tr. 77.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other work as a production inspector (for which there were 30,000 jobs in the state), shipping and receiving weigher (for which there were 1,000 jobs in the state), and rental clerk (for which there were 1,600 jobs in the state). (Tr. 77-78.)

The ALJ then added the limitation that the person would be unable to maintain concentration, persistence, or pace for two hour periods over an eight hour day. (Tr. 78.) The VE responded that such a person would be precluded from all employment. (Tr. 78-79.)

Plaintiff's counsel then asked the VE whether a person who had difficulty completing a normal work day or work week without interruptions one-third of the time, and had difficulty performing at a consistent pace without an unreasonable number of breaks, would be able to work. (Tr. 79.) The VE responded that such limitations would preclude employment. (Tr. 79.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y*

8

*of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

      The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does

9

prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2004.

2. The claimant has not engaged in substantial gainful activity since December 15, 2000, the alleged onset date.

3. The claimant has the following severe impairments: borderline intellectual functioning, mild median nerve mononeuropathy on the right, post-traumatic stress disorder[,] and dysthymic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at the light exertion level with only occasional grasping or twisting of items with her right dominant hand. She can understand and remember simple instructions and concentrate on simple tasks for two hours [sic] periods over an eight-hour workday. She can interact appropriately with co-workers and supervisors and adapt to changes in the work setting.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2000 through the date of this decision.

(Tr. 17-24.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports

11

the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Plaintiff Under the Listings

The ALJ assessed Plaintiff's mental impairments under Listings 12.02 for "organic mental disorders," 12.04 for "affective disorders," and 12.06 for "anxiety related disorders." (Tr. 19.) Plaintiff contends that the ALJ should have assessed her under Listing 12.05 regarding "mental retardation" because the record evidence supports the conclusion that she meets or medically equals Listing 12.05C. For the following reasons, this assignment of error is not well taken.

It is the claimant's burden to show that she meets or medically equals an impairment in the Listings. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (per curiam). For a claimant to show that her impairment matches an impairment in the Listings, she must meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> Listing 12.05 provides the following:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

12

Listing 12.05. A claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph, as well as any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Here, the ALJ explained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 18.) He then addressed certain Listings regarding mental impairments, but did not explicitly discuss Listing 12.05. However, there is no basis to conclude that the ALJ should have assessed Plaintiff explicitly under Listing 12.05, and specifically under Listing 12.05C, because Plaintiff failed to presented sufficient evidence that she meets or medically equals the diagnostic description in Listing 12.05's introductory paragraph.

To meet Listing 12.05, the claimant must *presently* suffer significantly subaverage general intellectual functioning with deficits in adaptive functioning. *See English v. Comm'r of Soc. Sec.*, No. 2:10-cv-489, 2011 WL 3584333, at *3 (S.D. Ohio Aug. 15, 2011). Plaintiff did not make such a showing. She indicated on her application for disability benefits that she believed she was disabled by carpal tunnel syndrome. (Tr. 191.) During her hearing, she testified that she believed she was disabled because of problems with her right shoulder, arm, and hand, as well as arthritis in both knees. Regarding intellectual deficits, she mentioned only that she had "a light little mental disability" and trouble remembering things.

The ALJ found that Plaintiff functioned in the borderline range rather than the

mildly mentally retarded range. Although an actual diagnosis of mental retardation is not required to satisfy Listing 12.05, the lack of such a diagnosis remains a relevant consideration. *See* Thomas v. Comm'r of Soc. Sec., No. 08-cv-1365, 2010 WL 1254788, at *11 (N.D. Ohio Mar. 25, 2010) (collecting cases).

Further, the ALJ's finding that Plaintiff functioned in the borderline range is supported by substantial evidence. Plaintiff was diagnosed with borderline intellectual functioning in her developmental period. Although Dr. White assessed Plaintiff with IQ scores in the 60s, IQ scores alone are not dispositive of a claimant's intellectual functioning because they are only part of an overall assessment. *See* Listing 12.00D(6)(a) ("[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) (upholding the ALJ's decision where an examining psychologist found that although the claimant's IQ scores examined in isolation would tend to indicate mental retardation, the psychologist concluded that the claimant was actually in the borderline range of intelligent functioning). Dr. White declined to diagnose Plaintiff with mild mental retardation because there was a lack of supporting evidence; and Dr. White assessed Plaintiff with only mild to moderate restrictions. Moreover, Dr. Voyten and Dr. Kazmi opined that Plaintiff functioned at least in the borderline range. Indeed, Dr. Voyten found that Plaintiff's IQ scores as assessed by Dr. White were invalid because there was no basis in the record to explain

the decline in Plaintiff's IQ scores since her developmental period, and because the scores were belied by Plaintiff's manifest functional abilities.  Plaintiff has not challenged this evidence or presented other evidence to show that she presently suffers significantly subaverage general intellectual functioning.

Also, although Plaintiff contends that there is evidence that she suffered deficits in adaptive functioning during her developmental period, there is insufficient evidence that Plaintiff *presently* suffers deficits in adaptive functioning.  Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.  *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).  The ALJ found that Plaintiff had only mild restrictions in her activities of daily living and in social functioning; and moderate restrictions in concentration, persistence, or pace.  (Tr. 19.)  These findings are supported by substantial evidence.  Dr. White indicated that Plaintiff reported she was able to feed, bathe, and dress herself without assistance; care for her children; and perform most household duties such as wash dishes, clean, do laundry, shop, and cook.  Dr. White opined that Plaintiff was only mildly impaired in her ability to relate to others, including fellow workers and supervisors; mildly impaired in her ability to maintain attention, concentration, persistence, or pace; and not impaired in her ability to understand, remember, and follow instructions.  Further, Plaintiff testified that she had a driver's license and drove her daughter to and from school.  Plaintiff has not taken issue with this evidence, and this evidence supports the conclusion that Plaintiff does not presently suffer deficits in adaptive functioning.  *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (finding that "the

record shows that [the plaintiff's] adaptive skills are not deficient," where the plaintiff "cares for herself and her husband; cooks meals, does laundry, and shops; manages her finances; and takes public transportation."); *West*, 240 F. App'x at 698 (finding that substantial evidence supported the conclusion that the plaintiff did not suffer deficits in adaptive functioning where the plaintiff did not exhibit "marked" limitations in his daily living activities, social functioning, or ability to maintain attention and concentration, and did not demonstrate an inability to function outside of a highly supportive living arrangement).

Finally, when a claimant is represented by counsel, typically it is counsel's responsibility to structure the claimant's case in a way that claims of disability are adequately explored. *See Carrico v. Comm'r of Soc. Sec.*, No. 5:09-cv-2083, 2011 WL 646843, at *8 (N.D. Ohio Jan. 21, 2011) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997)). Here, Plaintiff's counsel before the Social Security Administration neither argued that Plaintiff met or medically equaled Listing 12.05, nor attempted to include in a hypothetical any additional limitations regarding intellectual deficits.[1]

As Plaintiff failed to present sufficient evidence that she met or medically equaled the diagnostic description of mental retardation in Listing 12.05, and failed to raise the issue before the Social Security Administration, and substantial evidence supports the ALJ's conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment in the Listings, this

---

[1] Counsel was put on notice that the Administration did not believe Plaintiff met or medically equaled Listing 12.05, as Dr. Voyten had assessed Plaintiff's mental RFC and did not consider Listing 12.05, and Dr. Voyten's assessment was part of the record evidence in front of the ALJ.

16

assignment of error is not well taken. There is no basis to conclude that the ALJ should have assessed Plaintiff under Listing 12.05.

### C. The ALJ's Assessment of Plaintiff's RFC

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because (1) although the ALJ stated that he concurred with the opinions of the state agency physicians, he did not include in his RFC determination all of the limitations opined by Dr. Voyten; and (2) as the ALJ failed to include all of Dr. Voyten's limitations in his RFC determination, the ALJ improperly substituted his lay opinion for Dr. Voyten's medical opinion. For the following reasons, this assignment of error is not well taken.

Dr. Voyten opined that Plaintiff was "able to complete multiple step tasks in situations where duties are relatively static, changes can be explained, and there are no production schedules or quotas." The ALJ stated that he "concurred" with the opinions of the state agency physicians because he found that they were well supported by medically acceptable clinical and diagnostic techniques and were not inconsistent with other substantial evidence in the record. (Tr. 23.) However, the ALJ did not limit Plaintiff to multiple step tasks; rather he limited Plaintiff further—to simple tasks.

Plaintiff contends that the ALJ should have limited her to a relatively static work setting where changes could be explained, and with no production schedules or quotas, because the ALJ concurred with Dr. Voyten's opinions. This contention lacks merit because Dr. Voyten did not limit Plaintiff to a relatively static work setting where changes could be explained and with no production schedules or quotas; rather, Dr. Voyten opined that Plaintiff could perform multiple-step tasks under those

17

circumstances. Because the ALJ limited Plaintiff to less than multiple-step tasks, there was no basis for the ALJ to include Dr. Voyten's additional limitations.

Further, Plaintiff's contention that the ALJ improperly rendered a medical opinion lacks merit. "The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.) (citing 20 C.F.R. § 416.946(c)). Here, the ALJ assessed Plaintiff's RFC based on the record as a whole, including Plaintiff's primary school records, the opinions of Dr. White and Dr. Kazmi, and Plaintiff's statements from her applications for disability benefits. (Tr. 22-23.) Accordingly, there is no basis to conclude that the ALJ rendered a medical opinion when he determined an RFC that was more restrictive than Dr. Voyten opined. *Cf. Nelms v. Gardner*, 386 F.2d 971, 973 (6th Cir. 1967) (finding that the ALJ improperly determined that the plaintiff's pain was not as severe as the plaintiff alleged based on personal observations and facts regarding the plaintiff's physical condition without citation to any evidence).

Finally, to the extent that Plaintiff takes issue with the fact that the ALJ's opinion appears inconsistent for determining an RFC more restrictive than an opinion with which the ALJ apparently concurred, Plaintiff has not provided any other legal basis of error or shown that she was prejudiced. Indeed, any error would appear to be harmless because Plaintiff enjoyed the benefit of being found more limited. Accordingly, this assignment of error is not well taken.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

<u>s/ *Nancy A. Vecchiarelli*</u>
U.S. Magistrate Judge

Date: March 2, 2012